459 So.2d 1215 (1984)
Bill GALLARDO
v.
NEW ORLEANS STEAMBOAT COMPANY.
No. CA-1953.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1984.
Rehearing Denied December 27, 1984.
*1216 Clyde A. Ramirez, I. David Warner, III, Patricia D. Miskewicz, New Orleans, for plaintiff-appellee Bill Gallardo.
E.S. Ned Nelson, Bryan, Nelson, Allen, Schroeder & Stephenson, New Orleans, for defendant-appellant New Orleans Steamboat Co.
Before REDMANN, C.J., and KLEES and GARRISON, JJ.
KLEES, Judge.
On October 12, 1981, plaintiff filed suit in the district court against the New Orleans Steamboat Company claiming personal injuries and property damage in the amount of $31,000.00. A trial was held, and on October 7, 1983, the district court rendered judgment in favor of the plaintiff in the amount of $51,333.32, including $50,000 in general damages. In his Reasons for Judgment, the trial judge found that the accident was caused solely by the negligence of defendant's employee, who failed to use reasonable care in opening a door, which struck Plaintiff. The trial judge also found that the accident dramatically increased the plaintiff's pain from a prior back injury, which had become manageable before that time, and additionally, had caused a reherniation of the L4-5 disc, as revealed by the CAT scan. The possibility that the plaintiff might elect surgery in the future was held to be too subjective to support an award for future medical expenses. Finally, the trial court found there was no loss of income caused by the accident.
The defendant appeals this decision on the grounds that the award for general damages is excessive and furthermore, that the trial court should have found the plaintiff negligent and reduced the award accordingly. For the following reasons we affirm the Trial Court's judgment on both issues.
FACTS
On May 19, 1981, the plaintiff, a safety consultant, went aboard the Natchez with Mr. Steve Koenig and Ms. Bonnie Zakotnik, both attorneys. Mr. Koenig and Ms. Zakotnik had employed the plaintiff to inspect an area of the Natchez where a client of theirs had fallen. The three boarded the steamboat as fare-paying passengers.
The accident occurred while the three were on the first deck of the boat, preparing to photograph a particular stairway. They were in an area where there were several chairs. Mr. Koenig was seated in a chair placed against the ship's bulkhead and just to the left of a double swinging door. The plaintiff was standing in front of Mr. Koenig, talking to him and changing the film in his camera, when an employee of the Natchez came through the swinging door very quickly, causing one side of the metal door to strike the plaintiff on his right side. The plaintiff stumbled, but did not fall. Shortly thereafter, the plaintiff reported the accident to the vessel's captain. The plaintiff's arm was red in the area where he had been hit, and he was also complaining of damage to his camera.
At the time of this accident, the plaintiff was being treated on a regular basis for several pre-existing injuries by Dr. Kenneth Adatto, an orthopedic surgeon. These injuries included residual back pain following the surgical removal of a ruptured disc in 1977, neck pain caused by a whiplash *1217 automobile accident in 1980, and a problem with his hand that eventually necessitated surgery in 1982. On May 19, 1981, just after disembarking from the Natchez, the plaintiff went to see Dr. Adatto complaining of pain in his right side and back. Dr. Adatto found bruises on plaintiff's right arm and right knee, as well as a back strain. To date, Dr. Adatto has treated the plaintiff conservatively, using drugs and an electronic device known as a TNS machine (Trancutaneous Nerve Stimulator). The plaintiff has been able to continue working as a safety consultant, with virtually no loss of income.
A CAT scan of the plaintiff's back taken in June of 1982 showed a soft tissue scar and possible ruptured disc at the L4-5 level, the same area as plaintiff's prior back surgery. Dr. Adatto indicated that while an operation was warranted, if the patient elected not to operate, he would not operate. He testified in deposition admitted into evidence that "We know he has a ruptured disc there, and if he wants it taken care of there is an operation available".
LAW
QUANTUM
Before a Court of Appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its discretion in determining the quantum. Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976). Even if it finds such an abuse of discretion, the appellate court cannot simply decide what it considers to be an appropriate award based on the evidence; rather, it can alter the award only to the extent of lowering (or raising) it to the highest (or lowest) point which is reasonably within the discretion of the lower court. Id.
After reviewing the record in this case, we do not find that the trial judge abused his discretion in awarding $50,000.00 in general damages. At the time of this accident, the plaintiff, Mr. Gallardo, had been suffering with a bad back since 1973, when he was working as an air traffic controller and a chair fell out from under him. This injury required plaintiff to take medication that disabled him from being an air traffic controller and eventually necessitated surgery. Following the surgery, plaintiff still had residual back pain and limited motion, as is common in patients who have undergone this type of operation. However, after he began using the TNS machine in November of 1980, plaintiff's back improved considerably. The plaintiff testified that in January of 1981, he began feeling "like a human being" again for the first time since the 1973 accident. This testimony was corroborated by the plaintiff's wife. Between January of 1981 and May 19, 1981, the date of the accident aboard the Natchez, the plaintiff was having little or no pain in his back, although he continued to see Dr. Adatto regularly and to take pain medication for his neck and his hand.
Following the incident aboard the Natchez, the plaintiff began experiencing back pain again, which caused him to resume frequent use of the TNS machine and to take more medication. The plaintiff testified that he is taking medication "constantly", except when he is working because the medicine has a narcotic effect. According to Dr. Adatto's notes, the plaintiff complained that he was only able to work a few hours at a time before resorting to the medication. In addition, Mrs. Gallardo testified that since the accident, her husband has been unable physically to do everything he could do prior to the accidentthat indeed, he is unable even to change a light bulb.
Under Louisiana law, a tortfeasor must take his victim as he finds him and is responsible for the consequences of his tort although the damages so caused are greater because of a prior condition of the victim which is aggravated by the tort. Reck v. Stevens, 373 So.2d 498, 502 (La.1979). In this case, there is ample evidence that the accident aboard the Natchez greatly aggravated plaintiff's pre-existing back injury, which had become manageable just prior to the accident. Defendant cites in its brief several prior decisions involving back injuries *1218 in an effort to show that the trial court's award in this case is excessive. We do not find these decisions persuasive. Moreover, the Louisiana Supreme Court has made it clear that prior awards must not be the primary tool used by an appellate court to determine whether damages are excessive; rather, the appellate court must look first to the individual circumstances of the present case. Reck v. Stevens, supra, at 501. After examining the particular circumstances of this case, we conclude that the award for general damages does not exceed the highest point reasonably within the discretion afforded the trial court.
CONTRIBUTORY NEGLIGENCE
In order to disturb the district court's judgment that the accident was caused solely by the negligence of defendant's employee, we must find manifest error in that judgment. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Our review of the facts reveals no such manifest error.
Both Mr. Koenig and Ms. Zakotnik testified that the defendant's employee came through the door very fast. Mr. Koenig stated that he came through the door "like a bat out of hell". The employee himself admitted that he went through the door without looking, with his head down, although each side of the door had a glass window in it. The plaintiff, Mr. Gallardo, was not standing in a restricted area, but rather in an area where the defendant had allowed chairs to be placed. Ms. Zakotnik testified that she and her companions had not moved the chairs, and the vessel's captain stated that his employees had the responsibility of insuring that passenger chairs remained in their proper places.
This evidence amply supports the trial court's conclusion that the accident resulted solely from the defendant's fault. A common carrier is required to use the highest degree of care, diligence and skill, and is liable for the slightest negligence, or lack of care, resulting in injury to its passengers. This duty of care is subject only to the condition that the passenger must not contribute to his injuries by any want of ordinary care on his part. Gaines v. Aetna Casualty & Surety Co., 110 So.2d 851, 853 (La.App. 1st Cir.1959); Johnson v. New Orleans Public Service, Inc., 139 So.2d 7, 9 (La.App. 4th Cir.1962). Applying this standard, we find that the defendant breached its duty of care as a common carrier, and furthermore, that the plaintiff was not negligent in any manner.
Accordingly for the foregoing reasons, we affirm the Judgment of the trial court. Costs of this appeal are to be paid by Appellants.
AFFIRMED.